166 So. 477

**ESMELE v. VIOLET TRAPPING CO., Inc., et al.**

No. 33456.

Dec. 2, 1935.

On Rehearing March 2, 1936.

Fred A. Middleton and Neil A. Armstrong, Jr., both of New Orleans, for appellant.

Leander H. Perez, Edward Rightor, and Edwin J. Prinz, all of New Orleans, for appellees.

Emmet Alpha, of New Orleans, amicus curiæ.

LAND, Justice.

Plaintiff leased certain lands in the parish of St. Bernard, owned by the Godchaux Sugars, Inc., and was in peaceful and undisturbed possession of same under the lease for more than 2 years prior to December 18, 1933.

Plaintiff secured trappers and placed them on this property for the purpose of catching muskrats for their pelts.

During the trapping season, beginning December 1, 1933, and ending March 1, 1934, the defendants, Violet Trapping Company, Inc., and Mirandona Bros., a commercial partnership, through their agents and employees, came upon the lease of plaintiff 18 days after the opening of the trapping season and forcibly ejected plaintiff's trappers from a large portion of the property under lease, or about 1,000 acres, and trapped the lands thereafter themselves.

Suit was filed in the civil district court for the parish of Orleans for damages sustained from December 10, 1933, up to January 10, 1934, and the present suit is for damages resulting from trespass from January 20th to March 1, 1934, or for a period of 39 days.

Plaintiff sues for damages in the sum of $8,365, the alleged value of 12,870 muskrat pelts, which he would have taken from the lease, at an average value of 65 cents each, because of the fact that he was not permitted by defendants to trap his lands. He also sues for the sum of $96.80, the alleged value of 22 dozen traps belonging to plaintiff and tortiously removed from the lease by defendants; and also for the further sum of $15, the alleged value of a pirogue, which had been smashed by the agents and employees of defendants.

In their answer, defendants denied all of the allegations in plaintiff's petition and set up that the lands of which they took possession were lands under lease to defendants.

In reconvention, defendants claim that plaintiff removed from their lands 9,684 muskrat pelts of an average value of 41.92 cents, or a total value of $4,059.53, and that the customary profit thereon to the lessee of trapping lands at that time amounted to 65 per cent., or a total of $2,638.70, of which amount, it is averred in the answer, the plaintiff has illegally deprived defendants and reconveners.

Defendants state in their brief that the disputed line ran some 3 miles, and that the disputed trapping lands involved some 300 acres, and that all disputed territory is within the limits of lands leased by the Violet Trapping Company.

Plaintiff leased from the Godchaux Sugars, Inc., 2,850 acres (estimated) in township 13 S., R. 14 E., in the southeastern district, on the east side of the Mississippi river, and described as the W. ½, and W. ½ of E. ½ of section 14; all of fractional section 15; E. ½ of S. E. ¼ of section 21; all of section 22; W. ½ of section 23; N. W. ¼ of section 26; all of section 27; and fractional E. ½ of E. ½ of section 28.

Plaintiff leased this property in 1929 for the trapping season of 1929–1930, 1930–1931, and 1931–1932, when his lease expired, but was extended for 1932–1933, and 1933–1934.

Plaintiff planted on the leased lands some "three-cornered grass," a grass particularly attractive to muskrats.

There are cement markers along the eastern boundary of the property of Godchaux Sugars, Inc. The lands of defend-

ants adjoin, on the east, the lands leased by plaintiff.

During the 4 or 5 years that plaintiff has been leasing and trapping this property, he has used the cement markers along its eastern boundary as the property line defining the eastern limit of the Godchaux Sugars' lands.

Prior to the season 1933–1934, no one had ever questioned the cement marker line of the Godchaux Sugars property, which was also posted against trespassers.

In the year 1926, Walter Y. Kemper, a well-known and competent civil engineer, surveyed the Godchaux Sugars property, and all corners were marked with wooden stakes. A year or two afterwards he was on the property and found that the cement markers had been put where he had originally placed the wooden stakes. Tr. pp. 16, 17, 18, 52.

Max Carig, a witness for plaintiff, testified that he worked for Mr. Kemper during the survey made by him of this property in the year 1926, and that the cement markers that are there now, defining the eastern boundary of the property, are in the same position in which Mr. Kemper had placed the wooden stakes.

This witness also testified that he had been trapping on this land since about the year 1923; that in the years 1926 and 1927 he leased it; that he has trapped with plaintiff since he leased the property; and that he used the boundary of the Godchaux Sugars lands on the eastern side, and that this line was accepted by everybody. Tr. p. 20.

Plaintiff testified that a surveyor, named Hawkins, was sent to his lease by defendants about December 18, 1933, or about 18 days after the trapping season for 1933–1934 commenced, and that this surveyor drew a line 2,500 feet wide inside of the eastern boundary of the property; that defendants trapped this territory until about 10 days before the trapping season ended March 1, 1934, and that the trespass covered about 1,000 acres.

Plaintiff had six trappers on his land from December 1st to December 10th, before the trespass was committed, and his employees were forcibly ejected therefrom, by "the frontier process" employed by defendants in this case.

Plaintiff, testifying from his books, gave the catch of each of these trappers upon the property as follows:

Max Carig, 660 pelts during the 10-day period.

Richard Virueda, 641 pelts during the 10-day period.

Angel Ramirez and Alex Perelta (working together) 1,138 pelts during the 10-day period, or 569 pelts each.

Fred Gailen and Alfred Ramirez, 561 pelts each during the 10-day period.

It appears, therefore, as stated in plaintiff's brief, that 3,461 pelts were taken in 10 days by 6 trappers, or an average of 576 pelts for each man during the 10-day period, or an average of 57 pelts per day.

Plaintiff has taken an average of 55 pelts a day as the basis for his claim.

Plaintiff was deprived of his property for a period of 39 days—January 20 to March 1, 1934—and the six trappers averaged 55 pelts a day, or 330 pelts per day for a period of 39 days, during which time plaintiff and his employees were ejected from his property by defendants. At 65 cents each, the total catch, estimated at 12,870 pelts, amounts to $8,365.00.

Plaintiff would have realized for these pelts $8,365, 50 per cent. of which he would have had to pay his trappers. He therefore lost as a result of the depredation of the defendants $4,182.50, for which he presents his claim in the present case.

Because of a suit in the United States court, where an application for an injunction by plaintiff against defendants was being applied for, and in order to prevent further trouble, an arbitrary line was accepted by both sides, by agreement of counsel, for the remainder of the trapping season, 10 days before its expiration. This line left plaintiff still deprived of a large portion of land of which he was in peaceful possession for more than 3 years.

Defendants do not attempt to account for how. many pelts were taken by them, although this was a fact exclusively within their knowledge, and was susceptible of proof by them alone.

Plaintiff has offered the only possible proof of his claim, under the circumstances of the case. Neither plaintiff nor any of his witnesses has been discredited as to the extent of the catch sued for in this case; and, most assuredly, they cannot be presumed to be witnesses unworthy of be-

lief. If the claim is excessive, it was within the power of defendants alone to have protected themselves, and they have failed to do so.

The possession of the plaintiff prior to the disturbance is undisputed; the disturbance itself is undisputed; the fact that defendants' trappers took charge of the land and took from it muskrat pelts is undisputed. Besides, the uncontradicted testimony shows that no trapping was done by plaintiff and his employees on any lands east of the cement markers defining the eastern limits of plaintiff's lease.

It is well settled that even against the lawful owner he who has been in possession of immovable property for more than one year has a cause of action to prevent an illegal disturbance of that possession and to recover damages resulting from such disturbance. Nicol v. Illinois Central Railroad Co., 44 La.Ann. 816, 11 So. 34; Mott v. Hopper, 116 La. 629, 40 So. 921; Rush v. Town of Farmerville, 156 La. 857, 101 So. 243; Code Practice, arts. 46, 47, 49; Pfister v. St. Bernard Cypress Co., 155 La. 575, 99 So. 454; Civil Code, arts. 3450, 3453 and 3455.

Defendants have placed no witnesses upon the stand to contradict the testimony of plaintiff and his witnesses. The value of the pelts, the value of the traps illegally taken, and the value of the pirogue that was smashed by the agents of defendants, have all been proven with reasonable certainty by plaintiff and his witnesses.

The total claim of plaintiff is for $4,294.30, consisting of $4,182.50—or 50 per

cent. of $8,365—and $96.80 for traps taken and $15 for destruction of pirogue.

Defendants have offered no proof to sustain their reconventional demand, which was rejected in the court below, in the judgment rejecting plaintiff's demand at plaintiff's cost.

It is therefore ordered that the judgment appealed from be affirmed, in so far as it rejects defendants' reconventional demand at their cost.

It is further ordered that the judgment appealed from be annulled and reversed, in so far as it rejects plaintiff's demand at his cost.

It is now ordered that plaintiff, Jacinto Esmele, do have and recover judgment against defendants Violet Trapping Company, Inc., and Mirandona Bros., a commercial partnership, and against Albert Mirandona, Henry Mirandona, and Andrew Mirandona, the individual members of said partnership, jointly and in solido, in the sum of $4,294.30, with legal interest from judicial demand until paid and all costs.

### On Rehearing.

FOURNET, Justice.

We granted the rehearing in this case in order to consider the following points:

(1) The request of the defendants to remand the case to the lower court in order that they might offer evidence to rebut the proof introduced by the plaintiff because of the alleged interference by the trial judge.

(2) The request to remand the case for additional proof on the ground that the plaintiff's evidence was insufficient to establish with legal certainty the amount of the alleged claim.

(3) The statement that the judgment should be amended so as to dismiss the suit in so far as Mirandona Bros. are concerned, as there is no evidence to show that they were connected with the alleged trespass.

The suit was instituted by the lessee of certain property, adjoining the lands of defendants, for damages resulting from the alleged wrongful trespass by defendants, and also for the value of twenty-two dozen traps converted by the defendants and of one pirogue destroyed by them.

The defendants filed a joint answer, denying the allegations of plaintiff's petition and, in reconvention, averred that plaintiff trapped upon certain lands belonging to them, and that they are entitled to recover the sum of $2,638.70, being the amount of the profit they would have made on the catch of rats by plaintiff's trappers under a fair and customary trapping agreement.

On these issues the case went to trial. Plaintiff rested his case, after having offered in evidence his own testimony, together with that of fourteen witnesses, including W. Y. Kemper and Victor E. Hawkins, civil engineers. Defendants also rested their case, after having introduced the testimony of one witness, C. A. Robert, civil engineer and surveyor. Whereupon the trial judge rendered judg-

ment in favor of defendants, dismissing the plaintiff's suit, and assigned as his reasons therefor the following:

"After hearing all the testimony, there are only two witnesses that I can believe. The Court feels that about ninety per cent of the testimony given by the other witnesses cannot be believed. I am well acquainted with the Godchaux land, and the trappers and with trapping life, and I know just about what a trapper could catch, and what he ought to catch. I know just about how long it takes to cure a pelt for the market, and I know that the testimony that those men gave as to their catch, and the manner of curing the pelt, and the number of pelts that they caught, could not be believed. It is the opinion of the Court that the plaintiff has not proved its case, and I am going to dismiss the suit."

He also dismissed the reconventional demand.

On appeal to this court, in our decree of December 2, 1935, we amended the judgment of the lower court by awarding plaintiff the sum of $4,294.30, and, with reference to the proof in support of plaintiff's claim, we said:

"Defendants do not attempt to account for how many pelts were taken by them, although this was a fact exclusively within their knowledge, and was susceptible of proof by them alone.

"Plaintiff has offered the only possible proof of his claim, under the circumstances of the case. Neither plaintiff nor any of his witnesses has been discredited, as to the extent of the catch sued for in this case; and, most assuredly, they cannot be presumed to be witnesses unworthy of belief. If the claim is excessive, it was within the power of defendants alone to have protected themselves, and they have failed to do so."

▮ The defendants state that they are entitled to have the case remanded to the lower court, in order that they might introduce evidence to disprove the testimony of plaintiff's witnesses, since they offered no evidence on the trial of the case in the lower court because of the ruling of the trial judge that none was necessary, citing the following authorities: Code Practice, art. 906; Robertson v. Lucas, 11 Mart.(O.S.) 187; Bainbridge v. Clay, 3 Mart.(N.S.) 671; Noble v. Flower, 36 La. Ann. 737; Hammons v. Edwards, 6 La. App. 752; Archer v. Daniels, 42 La.Ann. 816, 8 So. 588; Dunn v. Springfield Fire & Marine Ins. Co., 104 La. 31, 28 So. 931; Paterno v. Kennedy The Cleaner, Inc., 18 La.App. 649, 138 So. 531; Lukens Iron & Steel Co. v. Gitzinger, 12 Orleans App. 202.

The record shows that the trial judge made the above-quoted ruling only after the defendants had rested their case. This is further shown by counsel's own version of what took place, for in their brief, filed October 14, 1935, they state:

"After the taking of plaintiff's testimony, consuming the best part of two days, counsel for defendant informed the Court that defendant's answer not only denied the trespass upon plaintiff's lands and that

defendant's men trapped thereon, but contained also a reconventional demand based on the fact that the plaintiff's men had trapped on defendant's lands and purloined therefrom some $2500.00 of furs, but that plaintiff's endeavor to prove a trespass and the quantum of damages by the testimony of illiterate trappers had so signally failed, that defendant's counsel rightly feared that his proof of trespass and damages to defendant's land would meet with the same fate and not desiring to consume the Court's time in a useless effort, he would submit without evidence, *confident that plaintiff had failed to prove a case.*

"*Thereupon, the Court made the following statement:*

"'*After hearing all of the testimony* * * *'* " (Italics ours.)

The authorities cited by counsel for defendants are to the effect that, where the trial judge interferes with either party litigant introducing their evidence, which they were prepared to present in the event the appellate court reversed the judgment of the lower court, in the interest of justice, the party whose evidence had been excluded through the interference of the trial court should be afforded an opportunity to do so by having the case remanded.

In the instant case it is clearly shown that the trial judge in no way interposed himself in excluding any of the defendants' evidence. Their learned counsel elected to submit the case without evidence, because they had concluded that the plaintiff had not made out a case on the

question of liability or the question of quantum. Both of these issues were clearly presented, and defendants had every opportunity to introduce any relevant proof that they might have had. When this case was originally presented here, counsel for defendants still maintained their original contention that the evidence was insufficient. It was only after we differed with them that they requested the court to remand the case. Their counsel was of the opinion that it was in the interest of their clients not to offer this evidence, and it is now too late, after the matter is here on rehearing, to ask the court for the first time to remand the case.

To send the case back to the lower court for further evidence under such circumstances would clearly lead to abuse, in that litigants would submit their cases upon what they believed to be the weakness of their opponent's evidence, knowing that, if they failed, they would be given another opportunity to introduce evidence to rebut it.

It is further contended by counsel for the defendants that the proof with reference to quantum is insufficient; in short, that this evidence does not prove the amount of the claim with that legal certainty which the law requires. In our original opinion we stated what this evidence consisted of. We now point out that the amount claimed in the reconventional demand, which is verified by the defendants, corroborates the testimony of the plaintiff and his witnesses in showing that the amount allowed is fair and reasonable.

It is said that, in so far as Mirandona Bros. and the individual partners thereof are concerned, there is no evidence in the record to connect them with the alleged tort or damage of which plaintiff complains. Without reproducing in detail the evidence in the record touching on that point, suffice it to say, after reviewing the testimony, we are convinced that the record shows conclusively the contrary.

For the reasons assigned, we conclude that our original opinion is correct, and it is therefore reinstated and made the final judgment of this court.

ODOM, J., dissents.