157 So.2d 598 (1963)
Mrs. Marion W. GILLAN, Mrs. Jean G. Jacobson and Harry A. Jacobson, Plaintiffs-Appellees-Appellants,
v.
Shirley T. JONES, J. Newton Jones, L. Kenneth Jones, Howard L. Jones, Edgar Carneal Woodyear, DeWitt Smith, (Except E. C. Woodyear, who is not Appellant) Defendants-Appellants-Appellees.
No. 9848.
Court of Appeal of Louisiana, Second Circuit.
August 30, 1963.
Rehearing Denied November 1, 1963.
Writ Refused January 20, 1964.
*599 Theus, Grisham, Davis, Leigh & Brown, Monroe, Teller & Biedenharn, Vicksburg, Miss., for plaintiffs-appellees-appellants.
Thompson, Thompson & Sparks, Monroe, Brandon, Brandon, Hornsby & Handy, Natchez, Miss., Davenport, Kelly & Farr, Monroe, Spencer, Sevier & Adams, Tallulah, for defendants-appellants-appellees.
Before HARDY, GLADNEY and AYRES, JJ.
HARDY, Judge.
Plaintiffs instituted this suit as a possessory action, coupled with a demand for damages in the nature of trespass for the *600 wrongful cutting of timber on an extensive tract of land located in the Mississippi River in Madison Parish, Louisiana.
The present plaintiffs are Mrs. Marion Gillan, a resident of the State of Nebraska, and Mrs. Jean G. Jacobson, a resident of the State of Mississippi, who was substituted as a plaintiff, individually and as testamentary executrix of the estate of her deceased husband. Named as defendants were Shirley T., J. Newton, L. Kenneth and Howard L. Jones, residents of the State of Mississippi; Edgar C. Woodyear, a resident of Madison Parish, Louisiana, and DeWitt Smith, a resident of Ouachita Parish, Louisiana.
After trial there was judgment in favor of plaintiffs, confirming them in possession of the property involved, awarding damages against the defendants, Howard L. Jones and DeWitt Smith, for a sum slightly in excess of $25,000.00, representing stumpage value of the timber removed; sustaining the plea to the jurisdiction ratione personae on behalf of defendants, Shirley T., J. Newton and L.Kenneth Jones; rejecting plaintiffs' demands for a monetary judgment against defendant, Woodyear, and taxing costs of court in the proportion of one-third against plaintiffs and two-thirds against the defendants cast in the judgment.
From the judgment the Jones defendants and DeWitt Smith have appealed, suspensively and devolutively. Plaintiffs have perfected a devolutive appeal with respect to that part of the judgment rejecting the demands against the defendant, Woodyear, and further have answered the appeal of the other defendants, praying (1) for an amendment of the description of the property as set forth in the judgment; (2) an increase in the amount of damages allowed on the basis that defendants were in bad faith; (3) rejection of the plea to the jurisdiction on behalf of Shirley T., J. Newton and L. Kenneth Jones and the inclusion of these parties as solidary obligors for the amount of damages; and (4) the taxing of all costs against the defendants cast. It is noted that in answer to the appeal the plaintiffs-appellants also prayed for judgment against the defendant, Woodyear, but, inasmuch as this defendant did not appeal, plaintiffs' claims to relief must be adjudicated upon the basis of their appeal against this defendant and not by means of the answer to the appeal of the other defendants.
This suit was filed in the Sixth Judicial District Court for the Parish of Madison on June 4, 1956. Plaintiffs alleged their possession as owners of a tract of land described as:
"All of fractional Sections 33, 34, 35, 36, 37, 38, and 39 in Township 17 North, Range 14 East."
It was further alleged that the property above described originally constituted an island in the Mississippi River known as Island No. 103, or Paw Paw Island, or My Wife's Island, surveyed and platted under the supervision of the Surveyor General of the United States, approved in September, 1846, and officially recorded in the United States Land Office.
The Island in question was situated west of the main channel of the Mississippi River, which originally separated it from the Mississippi shore, ad was cut off from the Louisiana mainland by an island chute along the west side. The river gradually shifted its channel, eating into the area of the so-called island chute to the west of the property until finally this location became accepted as the main channel of the river. Thereafter, the river again began to change its course back to the east, reinstating its main channel at or near its original location, whereupon the island chute filled up to an undetermined and disputed extent. The situation remained in this condition until the year 1934, when, under the supervision of the United States Corps of Engineers, the area occupied by the island chute was dredged out to form an artificial cut-off, which, since that time, has been occupied by the main channel of the river.
*601 Plaintiffs' claims for relief are predicated upon the contention that they were and had been for a long period of years in complete and undisturbed possession of Paw Paw Island and that this possession was disturbed by the defendants' trespass, consisting of timber cutting operations which were begun in January, 1955. Particularly material and enlightening with reference to plaintiffs' claim is the following allegation of their petition:
"Petitioners show therefore that at the present time My Wife's, or Paw Paw, Island, comprising the property described in paragraph 1 above [the description by governmental plat as above noted] together with the accretions which have been added thereto as above set forth, while not occupying all of the same physical location which it occupied when originally surveyed, nevertheless constitutes a large tract of land which lies east of the main channel of the Mississippi River as it was dredged by the United States Engineers in the year 1935 [1934] and west of the main channel as it existed prior to said dredging."
Against plaintiffs' petition the defendants, Woodyear and Smith, interposed an exception of no right and no cause of action. The exception of no right of action was referred to the merits and the exception of no cause of action was overruled. The four Jones defendants filed an exception to the jurisdiction of the court ratione personae, which was sustained. However, this judgment was subsequently reversed to the extent of overruling the exception of Howard L. Jones on the ground that he had subjected himself to the jurisdiction of the court and had been personally cited. A plea of prescription was also filed on behalf of defendants, based upon the contention that a real disturbance of plaintiffs' contended possession had occurred long prior to January, 1955. This plea was referred to the merits and eventually overruled.
Slightly more than a week following filing of this suit in Madison Parish, that is, on January 12, 1956, these plaintiffs also instituted suit in the Chancery Court of Adams County, Mississippi, against the four Jones defendants, for damages resulting from wrongful cutting, removal and conversion of timber from Paw Paw Island. It is apparent that this action was taken for the purpose of protecting the rights of plaintiffs against the possible running of prescription. In answer to the Mississippi suit, defendants admitted the cutting of the timber but asserted their ownership of Paw Paw Island and converted their answer into a cross bill, praying for recognition of their ownership. To the cross complaint plaintiffs filed demurrers on the ground that the Adams County Court had no authority to adjudicate title to lands located in the State of Louisiana. These pleadings were overruled, and a temporary injunction was issued enjoining plaintiffs from further action in any court other than the Chancery Court of Adams County. The case was tried over the objection of plaintiffs who refused to introduce any evidence. The Jones defendants tendered a mass of evidence bearing exclusively upon title, and, at the close of the testimony, the Chancellor entered a decree adjudicating the Jones to be the owners of Paw Paw Island and making permanent the temporary injunction theretofore issued. On appeal the judgment of the Chancery Court was reversed and remanded in accordance with the principle that the Mississippi court was without jurisdiction to adjudicate title to lands located in the State of Louisiana; Jacobson et al. v. Jones et al., 236 Miss. 640, 111 So.2d 408.
Subsequent to this action by the Supreme Court of Mississippi proceedings were resumed and continued to judgment in plaintiffs' suit in Madison Parish.
The main burden of the defense is that Paw Paw Island, as originally surveyed and platted, has been completely destroyed and rendered non-existent by the inexorable processes of erosion over a long period of years, and that the property in question had *602 been formed by accretions to the Louisiana mainland, particularly the properties known as Sparta and Duckport Plantations owned by the defendant, Woodyear, constituting a peninsula denominated by defendants as Marshall Point. Upon this issue defendants-appellants predicate numerous detailed specifications of error with reference to the opinion and decree of the trial judge. These parties further re-assert their pleas of abatement and prescription; contend that the court further erred in casting the defendants, DeWitt Smith and Howard L. Jones, in solido, for the total stumpage value of timber cut, and finally assert error in the rendering of an in personam judgment against Howard L. Jones.
The record before us is unusually and unnecessarily complex and voluminous, consisting of nine bound volumes containing in excess of 2,200 pages of pleadings, exhibits and testimony on trial of the Louisiana case, scores of maps, charts, etc., thirteen volumes of diaries kept by the plaintiff, Mrs. Jean Gillan Jacobson, dated from 1912 to 1954. Additionally, the eight bound volumes of the transcript of the proceedings and trial in the Mississippi case were introduced in evidence. With the consent of counsel we did not consider this exhibit, inasmuch as it comprehends almost exclusively the issue of title, which was presented by defendants, and was conclusively disposed by final judgment of the Supreme Court of Mississippi in the case cited supra.
Frankly, our principal efforts have been devoted to the necessity for winnowing the wheat from the chaff. Our able brother of the district court, the late, lamented Judge Voelker, was exceedingly liberal, at the insistence of counsel for the parties litigant, in admitting irrelevant and extraneous evidence which, in the final analysis, is immaterial to a determination of the issues presented.
Finally, we have been favored with some 350 pages of briefs by opposing counsel. This observation is, in no wise, intended as criticism, but, rather, we wish to express our appreciation for the painstaking, comprehensive and detailed presentation of the opposed contentions of the respective litigants. Although much of the argument could have been omitted, we recognize the necessity for diligent discussion of numerous pointsunder the condition of the record as made upwhich are immaterial to a resolution of the controlling issues.
The issues presented by this appeal may be enumerated as follows:
(1). The question of jurisdiction ratione personae of the defendant, Howard L. Jones;
(2). Defendants' plea of one-year prescription as against plaintiffs' action;
(3). Defendants' plea of abatement;
(4). The principal issue on the merits with reference to plaintiffs' possession vel non of the property in dispute and their right to recover from defendants for damages resulting from an actual and real disturbance thereof;
(5). The determination of good or bad faith of defendants and the consequent ascertainment of damages.
Proceeding to a discussion of the issues as above stated in the order set forth, we turn our attention to a consideration of the contention on behalf of defendant-appellant, Howard L. Jones, that his exception to the personal jurisdiction of the court should have been sustained. The facts are that all of the Jones defendants filed special exceptions to the jurisdiction ratione personae, in limine litis, together with other exceptions subsequently filed to the in rem action. The trial of these exceptions was fixed for February 5, 1960, and on that date Howard L. Jones was present in the courthouse at Tallulah, Madison Parish, Louisiana, whereupon plaintiffs caused him to be served with citation and copy of their petition. *603 Reference to the minutes of the court of February 5, 1960, disclose the following entries:
"All exceptions filed herein on behalf of all defendants came on this day for hearing.

"Said exceptions, having been argued, and submitted, seriatim, were disposed of by the court as follows:" (Emphasis supplied.)
While it is argued by counsel for Jones that he was present on the date and in the place set forth, "* * * for the purpose of testifying in support of defendants' exceptions * * *", there is nothing in the record which sustains this statement. All of the matters which were before the court and fixed for hearing on February 5, 1960, were preliminary pleadings and there is no indication whatsoever that any taking of testimony was either necessary or even contemplated by the parties. Therefore, it can only reasonably be assumed that the presence of Howard L. Jones was entirely voluntary and was neither necessary nor required. The general rule has been referred to by counsel for all parties as set forth in 42 Am.Jur., Section 143, page 124, which we quote, in extenso, as follows:
"§ 143. Parties Litigant.As to whether a party litigant may claim the exemption from service of process while in attendance upon the trial of his case is a question which has resulted in a conflict among the authorities. According, however, to the weight of authority, non-resident suitors are privileged from service of civil process while going to, attending, or returning from, court to the same extent as non-residents within the jurisdiction for the purpose of attesting as witnesses in pending litigation. The rule is especially true where parties may be examined as witnesses, or where such party is attending the trial of a cause he is to testify as a witness. The exemption can only be repealed by an express statute. The rule stated is ordinarily applied both to parties plaintiff and parties defendant, although a few courts have limited it to parties defendant. In some jurisdictions, by virtue of local practice statutes, the privilege of a party litigant from service of process while in attendance on the trial of his cause extends to all suitors, including residents as well as non-residents of the state, but it seems generally to be assumed that the privilege is limited to non-residents and to residents who are attending court in a county other than the county of their residence, and does not extend generally to residents. Statutes which privilege all suitors from arrest while going to, attending, or returning from, court have been construed as extending the privilege to service of summons in civil cases.
"In several jurisdictions, the courts while conceding the force of the reasons advanced for protecting nonresident witnesses from the service of process in another action have declined to extend such privilege to non-resident suitors, for the reason, as is said, that service of a writ of summons, amounting simply to a notice, does not obstruct the administration of justice, nor interfere with the attendance or attention of a party to the suit then on trial. The rule will not be extended to a non-resident witness who is interested in the event of the action, but who is not a party thereto, either real or nominal. As regards such a witness, the general rule exempting non-resident witnesses from service of civil process while going to, remaining at, and returning from, court is applicable. As an illustration of possible injustice from the majority rule, it is said that a resident creditor might have a claim against the non-resident plaintiff which he could not set up in that action, and yet which he should not be compelled to lose if he could not incur the expense *604 of suing in another state." (Emphasis supplied.)
We think the rule is more emphatically set forth in Section 148, page 128, op. cit. as follows:
"§ 148. Particular Situations, Business of Party or Witness in State.Examination of the authorities discloses that the principle which uniformly underlies the decisions is that the privilege or exemption from service of process is extended and is limited to those persons whose duty requires their attendance upon the court, and whose presence is necessary to the court in the performance of its function of administering justice.

"The immunity extends, not merely to particular individuals, but to all persons under certain circumstances, on the principle that where the law requires any duty of the citizen, it will protect him in the discharge of that duty, and that individuals cannot demand the use of public civil process, so as to arrest or interfere with others in the performance of public duties, or of duties required by public process. But in no instance is immunity to be given a person who appears before the court in any capacity, unless his appearance is in response to a duty or his presence is necessary to the court. Attendance upon the trial of a cause, however vital to the personal interests of those concerned, if not for the purpose of facilitating the progress of the cause, is not a ground for granting immunity. It is not to be extended so far as to exempt all persons voluntarily coming within the jurisdiction of the court from being served, merely because they may come to consult with attorneys, investigate transactions, or otherwise attend to matters which may become the subject of litigation or may eventually reach a trial. A non-resident officer of a corporation, coming into the jurisdiction voluntarily, to render assistance to the corporation's solicitor, and attend an argument upon a motion for preliminary injunction, which was argued solely upon affidavits previously filed, is not while so in attendance exempt from service of process in proceedings against himself; any other rule, it is said, would enable a party and not the court to extend the privilege and determine the necessity of a person's presence, and would extend the class of privileged persons from those over whom the court has control to all those who might be deemed by a party to be necessary to him or his counsel in the preparation and presentation of the case. In some situations, however, immunity from service may be claimed by one who has come into the state for the purpose of settling or compromising a controversy." (Emphasis supplied.)
A discussion of privilege and exemption from service of process while attending court is found in XXV T.L.R. 296. The author concludes his comment with the following observation:
"In Louisiana the general rule is that nonresidents may be served wherever they are found within the state. Article 165(5), La.Code of Practice of 1870. The absence of articles in the Code of Practice relative to immunity from service of process in favor of any class of persons indicates a general intention to make all persons subject to service of civil process. However, nonresident witnesses, who enter or pass through the state under summons to appear in criminal proceedings have been specifically exempted from service of civil process in connection with matters which arose before their entrance into the state. La.R.S. of 1950, 15:152.3."
In the absence of any duty upon Jones to be present in person at the hearing and submission of the pleadings under consideration by the court, we can only conclude that by his presence he subjected himself to personal *605 service of citation, and, as a result, the exception to the jurisdiction as to him was properly overruled.
In this connection, we do not find that the holding in the Louisiana case of Simmons v. Cowper, 233 La. 397, 96 So.2d 646, is applicable, for the opinion in that case clearly discloses that the defendant, after his exception to the jurisdiction had been sustained, appeared only at the trial on the issues of the proceedings in rem. Nor is there any indication that the defendant in the cited case was personally served with process.
Correlated with the above issue is the contention, asserted by plaintiffs in their answer to the appeal, that the other three Jones defendants should be considered to have waived their exception to the jurisdiction of the court. We find no support for this argument. This point was disposed by our Supreme Court in State v. Younger, 206 La. 1037, 20 So.2d 305. The same nature of reservations in additional pleadings, as considered and approved by the court in the cited case, were used by these three Jones defendants in the instant case. The case of George W. Garig Transfer, Inc. v. Harris, 226 La. 117, 75 So.2d 28, is readily distinguishable on the ground that there was no reservation of rights, nor presentation of an alternative plea.
Defendants' plea of one-year prescription is predicated upon the ground that the possessor is required to bring his suit within the year in which the disturbance of his possession took place, under the provisions of Article 49 of the Code of Practice. In support of this position it is urged that plaintiffs' possession, if such existed, was disturbed by the defendant, Woodyear, more than a year before the filing of this suit through the following actions:
(1). That after his purchase of Sparta and Duckport Plantations the defendant, Woodyear, wrote Paul H. Gillan, the professed owner of the land in dispute, advising that he had employed A. C. Volk, a registered Civil Engineer, to run an established line between their properties; that Volk surveyed and established such a line, which was painted by Woodyear and along which he affixed posted signs;
(2). That during negotiations between Woodyear and the Anderson-Tully Lumber Company, another line was surveyed by another engineer and trees along the line were identified by hack marks; and
(3). That in the year 1945 defendant, Woodyear, employed Mr. St. George Richardson, an engineer specializing in Mississippi River accretions, to study and report the origin of the area of land in dispute, which report, duly prepared by Richardson, characterized the property as being accretions to Sparta and Duckport Plantations, and which report was studied by Jacobson, one of the original plaintiffs in this suit.
We are unable to conclude that any of the above described incidents constituted a real and actual disturbance or interference with plaintiffs' asserted possession.
With reference to the first incident above set forth, the record contains a letter directed by defendant, Woodyear, to Paul H. Gillan, et al., under date of November 3, 1943, the content of which was as follows:
"I have secured the services of Mr. A. C. Volk, a registered surveyor, to run the line between your property and mine on Paw Paw Island. He will be there all day next Wednesday, November 10th, and if you care to be present we will be glad to have you."
This communication was promptly answered by letter of Harry A. Jacobson, representing the Gillan family, dated November *606 7, 1943, directed to the defendant, Woodyear, as follows:
"We have your letter of November 3rd., in which you say you have secured the services of a surveyor to run the line between your property and mine on Paw Paw Island.
"Paw Paw Island, consisting of Sections 33, to 39, inclusive, Twp. 17, R. 14, and accretions, is owned by members of the Gillan family. They own the entire island together with accretions thereto. No other property lines are involved. So you can readily see we are not interested in running any lines."
The above emphatic rejection of participation in a survey of the property clearly supports the contentions of the Gillan family. The mere fact that Woodyear proceeded to have a survey made, and marked the same, is not shown to have had any effect which could possibly be construed as a disturbance of possession.
The same observations apply to the other incidents above noted. It follows that the plea of prescription, unsupported by substantial evidence of a real disturbance of possession, was properly overruled.
The plea of abatement urged by defendants-appellants is based upon the contention that the action of plaintiffs in filing suit in Mississippi, in which they asserted ownership of the property involved, effected an abatement or renunciation of their Louisiana possessory action, and, as a result, foreclosed their right to proceed with the prosecution thereof. We find no merit in this argument. The assertion of ownership of the land, as pointed out by counsel for defendants-appellants in brief before this court, was necessary to support the claim of ownership of the timber and the rights to damages for the alleged wrongful and illegal cutting thereof. However, plaintiffs' Mississippi suit was an action for the recovery of damages resulting from the alleged unlawful or illegal cutting of timber and cannot, by any stretch of the imagination, be considered as equivalent to the Louisiana petitory action. It was the defendants who raised the issue of title and sought to be declared owners of the property in the Mississippi suit. We think the question of abatement was properly and precisely disposed by the Mississippi Supreme Court in the following statement:
"It seems to be well settled that personal actions may proceed to judgment simultaneously in two courts with the right to plead res judicata as to the judgment first rendered in the other court. Kline v. Burke Construction Company, 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226; Streckfus Steamers, Inc. v. Kiersky, Assessor, 174 Miss. 125, 163 So. 830."
The principal issue on the merits requires a determination of the possession, vel non, of plaintiffs over the property involved in this suit. In an attempt to clarify the opposed contentions of the parties, it is necessary to undertake a recital of historical and geographical data as evidenced by the record.
As we have above observed, at the time of the original government survey and platting of what we will refer to as Paw Paw Island, the property embraced in said Island occupied an area separated from the west, or Louisiana, mainland by an Island Chute and opposite three certain mainland properties from north to south known respectively as Cabin Teele, Sparta and Duckport Plantations. The Island Chute gradually deepened and widened by reason of the effort of the Mississippi River to change its channel, which finally was effected, and, for a long period of years, Paw Paw Island was separated from the mainland by what had become the main channel of the Mississippi River, occupying the area theretofore known as the Island Chute. Unquestionably, during the period of this change there was a substantial erosion of the northern and western portions of Paw Paw Island. It is equally certain that there was a substantial *607 extension of the Island formation by accretions on the south and east.
After a considerable period of time, the river again changed course, moving back to the east of Paw Paw Island, and, as a result, the division between the Island location and the west mainland was again marked by the Island Chute. In this connection, we think it pertinent to observe that the median line of this Chute has apparently been regarded at all times as constituting the west boundary of Paw Paw Island.
As we observed early in this opinion, there is some question as to whether the Chute entirely filled in or whether it continued to provide a water channel at certain stages of the river. We are impressed by the declaration of counsel for defendants-appellants with reference to one of their asserted specifications of error:
"* * * the evidence in this record clearly establishes that the Island Chute has never filled in, but, to the contrary, has become the main channel of the Mississippi River."
In preparation for the construction of the Marshall Cut-Off, the United States, by expropriation proceedings, procured a judgment of condemnation against Tchula Co-operative Store, the then owner of the property and one of defendant Woodyear's predecessors in title. The judgment of condemnation was signed in November, 1934, and the ownership map prepared by the United States Engineers Office shows that the eastern boundary of the property taken was fixed as the median line of the Island Chute. This map also indicates the existence of a tract of land east of the said median line, which is simply designated as "My Wife's (or Paw Paw) Island."
In April, 1929, Judge F. X. Ransdell of the Sixth Judicial District Court rendered and signed final judgment in a suit instituted by Silas Y. Gillan against Anderson-Tully Lumber Company and R. R. Roths. This suit was instituted as a possessory action in which plaintiff asserted a disturbance of his possession by the defendants on the same property as described in this action. At the time Roths was the owner of the mainland property known as Cabin Teele Plantation. The judgment was a consent decree which, by agreement, treated the suit as a petitory action.
While we agree with the argument of counsel for defendants-appellants that the effect of the judgment must be regarded as binding only upon the parties thereto, we are constrained to observe the unqualified concession in counsels' brief that:
"Defendants make no claim of title or possession to the northern portion of Marshall Point, which they contend is accretions to Cabin Teele Plantation."
In view of the above admission, we think it necessarily follows that the 1929 judgment is pertinent as confirming both title and possession of the northern portion (of undetermined extent) of the property involved in this litigation.
It must be pointed out that defendants' insistence upon the issue of title and ownership would be appropriate to a petitory action. They have had repeated opportunities to convert this suit into such nature of action, which, indeed, was the basis of their cross complaint in the Mississippi suit, in which they unequivocally claimed title, but, in this action, have chosen instead to rely solely upon the question of possession as tendered by plaintiffs' petition.
We continue with a recital of the factual events which gave rise to this suit.
Defendant, Woodyear, acquired title to Sparta Plantation in 1940 and to Duckport Plantation in 1942. Of significance is the fact that while Woodyear acquired title to Duckport Plantation by specific government plat descriptions from Robert J. and Mrs. Augusta J. Clark under conveyance dated December 14, 1942, he did not acquire a descriptive title to the alluvion or accretions to said property until May 21, 1955. This *608 conveyance was executed by Mrs. Augusta J. Clark, the widow of Robert J. Clark, only ten days before Woodyear's conveyance to the Jones' defendants of all that part of Sparta and Duckport Plantations, together with accretions thereto, lying east of Marshall Point Cut-Off.
We think it is also material to our consideration, that by deed dated January 10, 1941, defendant, Woodyear, conveyed * * * "that part of Sparta Plantation lying east of Drainage Canal and west of the Marshall Cut-Off in the Mississippi River" * * * with the exception of a tract situated in the west portion of the North Half of Section 31, which tract was separated from the Marshall Cut-Off by the property conveyed. Even conceding Woodyear's beginning of actual possession of Sparta Plantation after his purchase, we cannot conceive that his asserted constructive possession of accretions thereto could be maintained by his retention of ownership of a tract of land far removed and isolated from said accretions.
After causing the survey to be made by the engineer, Volk, in 1943, Woodyear employed another engineer, St. George Richardson, to make an inspection and report of the Island area lying across the Marshall Cut-Off in front of Sparta and Duckport Plantations, and in 1945 he entered into negotiations with Anderson-Tully Lumber Company for the sale of timber, which, however, was not consummated due to the immaturity of the timber growth. In the fall of 1954 the defendant, DeWitt Smith, inspected the timber on the Island and approached Jacobson with a proposal to purchase same, which offer was refused. After learning that Woodyear was claiming title to the property Smith entered into negotiations with him, which culminated in a written contract, under the terms of which Woodyear sold Smith 500,000 feet of timber. Smith, in turn, contracted with defendant, Howard L. Jones, for the sale of the timber, to be cut and loaded on barges at the bank of the river. Prior to the commencement of timber operations, Woodyear and Smith employed O. S. Rodgers, a civil engineer, to run the north line of the property described in the timber deed, which operation was undertaken and completed between January 11th and January 14, 1955. The Rodgers line is located some distance north of the Volk line, and, according to plaintiffs' contentions, the area between the two lines includes approximately 1,500 acres from which the majority of the timber was cut.
The timber cutting operations were discovered a few days later by Richard and Wallace Jacobson, sons of Mrs. Jean Gillan Jacobson and her now deceased husband, Harry A. Jacobson. These young men reported the trespass to their father, and, on his instructions, referred the matter to the family attorney, who immediately directed a letter to defendants, Woodyear and Smith, dated January 25, 1955, advising them of the ownership of the property in Mrs. Gillan and Mrs. Jacobson and warning them that they would be held accountable for their trespass and cutting of timber thereon.
After completion of the cutting of the 500,000 feet of timber contemplated in the deed from Woodyear to Smith, the Jones defendants acquired a deed from Woodyear, dated May 31, 1955, purporting to convey all that part of Sparta and Duckport Plantations, together with accretions thereto, lying east of Marshall Point Cut-Off, for a consideration of $40,000.00 from which was deducted the sums paid Woodyear for the half million feet of timber purchased by Smith. Subsequent to the execution of this document, the Jones defendants cut and removed an additional one million feet of timber, more or less, from the Island property.
We now proceed to set forth our findings and conclusions with respect to the question of possession as established by the record before us. First, we think it appropriate to note that there is no real dispute between the parties as to the identity of the property in controversy, which constitutes *609 a continuous tract of land forming an island lying east of the Marshall Cut-Off, which is now the main channel of the Mississippi River.
In consideration of the persistent contentions of counsel for defendants-appellants, and in view of the substantial mass of evidence bearing upon title, although we have deemed this to be irrelevant to a determination of the issue presented by this action, we feel impelled to give some attention to this point.
The definition, conditions and proof essential to the prosecution of a possessory action were plainly and specifically set forth in Articles 6, 47, 49 and 53 of our Code of Practice, which have been incorporated in the new Code of Civil Procedure. These articles are further implemented by the provisions of LSA-C.C. Articles 3437 and 3498.
The elements of the possessory action have many times been considered and enunciated in our jurisprudence, and it is well established, beyond any possible question, that one who has possessed immovable property for more than one year has a cause of action against an illegal disturbance of that possession, and the right to recover damages resulting therefrom, even against the lawful owner. Esmele v. Violet Trapping Co., Inc., 184 La. 491, 166 So. 477, and authorities cited; Loeblich v. Garnier (La.App. 1st Cir., 1959), 113 So.2d 95; Missouri Pacific Railroad Co. v. Littleton (La.App. 2nd Cir., 1960), 125 So.2d 37, and authorities cited.
In the Loeblich case, supra, the opinion contains this expression, which is also appropriate to the instant case:
"Likewise, in such actions by possessors, the trespasser may not excuse his violation of an apparent and generally recognized boundary by attempting to establish another and theoretically correct boundary." (cases cited).
The record establishes that the property here in dispute constitutes, and always has constituted, an island area and there is no contention as to the existence of fences or other monuments which might mark the extent and limits of the property. The delineation of boundary has been provided by nature.
Nor can we find that there is any possible doubt as to the conclusion that plaintiffs were in possession of the property for a period of well more than a year preceding the actual disturbance.
Plaintiffs, after showing severance of the the property from the public domain, have deraigned their title by mesne conveyances for a period of many years and have over-whelmingly established both the beginning and the uninterrupted continuance of their possession.
Since defendants conceded the ownership and possession of the northern part of the Island, the burden of proof rested upon them to disprove plaintiffs' possession of the remainder of the Island area and to establish their possession. We think they have signally failed to fulfill these requirements.
On the other hand, plaintiffs have preponderantly established acts of real possession in themselves and their authors in title, extending back to the year 1914.
Without the necessity for detailing the testimony in the record, it is clear that, after the purchase of the property denominated as Paw Paw Island by Silas Y. Gillan in 1912, he and his successors in title, down to and including the plaintiffs in this action, have shown a continuous chain of acts constituting real possession and clearly evidencing the intent to possess the entire Island area. These acts of possession are reflected in the conduct of extensive timber operations; the careful preservation of timber on the northern and western banks of the Island as they were threatened by erosion; the employment of caretakers; the existence of timber camps; the leasing *610 of grazing lands for cattle; the execution of mineral leases, etc. Additionally, it was established by the testimony of witnesses on trial that Silas Y. Gillan, his son-in-law, Harry Jacobson, and the latter's sons, Wallace and Richard Jacobson, made frequent trips to the Island for purposes of inspection. We have above referred to the diaries kept by the plaintiff, Jean Gillan Jacobson, beginning in 1912, before her marriage, and which were kept by intermittent and sporadic entries for a period of years, but between the years 1934 and 1954 appear to consist of regular entries. These diaries contained numerous references to visits to Paw Paw Island made by various members of the family at frequent intervals.
Between the years 1937some two years after completion of the Marshall Point Cut-Offand 1950, the record discloses that plaintiffs sold some three million feet of timber, which was cut and removed from the property in controversy, and the evidence of payments of severance taxes on the respective cuttings is set forth in the record, together with tax receipts, year by year, showing payment of property taxes.
After the disturbance of possession by Roths and Anderson-Tully in 1923 until the beginning of timber cutting by DeWitt Smith in 1955, there is no evidence of any real or actual disturbance of the possession of plaintiffs and their ancestors in title.
Briefly summarizing the effect of these acts of possession, we are convinced that they overwhelmingly establish the actual possession of the entire property over a period of more than forty years preceding the institution of this suit, and it follows that there is no necessity imposed upon plaintiffs for reliance upon constructive possession in order to show the extent of the land claimed. Under these facts, the evidence relating to title should have been excluded.
Defendants-appellants rely heavily upon the testimony of Austin B. Smith and O. S. Rodgers, qualified surveyors and expert potamologists, who rendered extensive reports and testified exhaustively with reference thereto with relation to what is denominated as the "genesis" of the lands comprising Marshall Point lying east of the Cut-Off channel of the Mississippi River.
With due respect to the knowledge, competence and ability of these witnesses, we cannot find that their testimony has any bearing upon the question of possession. In the final analysis, it is immaterial whether the property involved constituted accretions to Sparta and Duckport Plantations, inasmuch as the issue of possession is controlling.
Among their specifications of error defendants-appellants complain that DeWitt Smith and Howard L. Jones were erroneously cast in solido for the total stumpage value of the timber cut from the tract in dispute. This assignment of error is based upon the contention that the record shows that the value of the first cutting of approximately one-half million feet by DeWitt Smith, amounting to $7,826.13, was entirely disconnected from the subsequent cutting by the Jones defendants to the extent in value of $17,481.51. We cannot accept this contention. In the first place, the timber cut by Smith under his timber deed was contemporaneously sold under contract to the Jones; second, the deed from Woodyear to the Jones defendants on May 31, 1955, allowed credit for the value of timber theretofore cut, and, finally, it was established that after the asserted purchase of the accretions from Woodyear by the Jones, Smith retained some nature of a contingent interest. All of these transactions are so interrelated that we can find no reason for separating the liability as between Smith and Howard L. Jones.
Finally, we are required to determine the liability of Woodyear and the question of bad faith which is strenuously asserted on behalf of plaintiffs.
The record does not establish any active trespass or participation in a trespass *611 on the part of Woodyear. After being approached by DeWitt Smith, Woodyear sought and obtained professional legal and engineering advice from eminently qualified attorneys and engineers. Relying upon the favorable opinions with respect to his title, he executed the timber deed to DeWitt Smith and, subsequently, the conveyance to Jones. While it is true that the recitals of the latter instrument contained specifications, reservations and restrictions of warranty which indicated Woodyear's knowledge of the somewhat precarious nature of his rights, we can only consider these provisions as precautionary measures which presumably were recommended and prepared by his legal counsel.
The same determination is appropriate to the actions of DeWitt Smith and Howard L. Jones. Failing to find ground for a conclusion of either legal or moral bad faith on the part of any of the defendants, it follows that the plaintiffs' claim to an increase in damages, based upon the manufactured value of the timber cut and removed, should be rejected.
For the reasons above assigned, we conclude that the judgment appealed from is substantially correct. There are two particulars of the judgment with respect to which plaintiffs seek amendment in their answer to the appeal; first, the elaboration of the description of the property involved for the purpose of better identification, and, second, an increase in the monetary judgment.
From our examination of the record we feel that the original description of the property by government plat and in accordance with the original survey is presently too restrictive and should be enlarged for the purpose of providing a more accurate identification of the property concerned.
The record discloses that, in addition to the timber cut and removed by Smith and Jones, there was a further cutting of pulpwood by the Jones in the amount of $3,210.00, which should have been allowed as an item of damage.
In their answer to the appeal, plaintiffs further complained of the assessment against them of a portion of the costs. In our opinion, there is no valid reason for a separation of costs of the lower court, which we think should be assessed in their entirety against the defendants cast.
For the reasons assigned, the judgment appealed from is amended and recast to read as follows:
It is ordered, adjudged and decreed that:
(1). The pleas of prescription and abatement filed by defendants be and the same are overruled.
(2). The plea to the jurisdiction ratione personae on behalf of the non-resident defendants, Shirley T., J. Newton and L. Kenneth Jones be and it is hereby sustained, and, accordingly, the decree as to these defendants is restricted to the effect of a judgment in rem.
(3). The plea to the jurisdiction ratione personae on behalf of the defendant, Howard L. Jones, is overruled.
(4). There is judgment in favor of plaintiffs, Mrs. Marion W. Gillan and Mrs. Jean G. Jacobson, individually and as testamentary executrix of the last will and testament of Harry A. Jacobson, deceased, and against the defendants, Edgar Carneal Woodyear, DeWitt T. Smith, Howard L. Jones, Shirley T. Jones, J. Newton Jones and L. Kenneth Jones, in solido, recognizing plaintiffs as entitled to the possession of the property in controversy herein, more particularly described and identified as being:
All of fractional Sections 33, 34, 35, 36, 37, 38 and 39, in Township 17 North, Range 14 East, originally known as Paw Paw or My Wife's *612 Island or Island No. 103, with accretions thereto, which lands are otherwise identified as a contiguous body of land lying east of the main channel of the Mississippi River as it was dredged by the United States Engineers in the year 1935 and west of the main channel of said river as it existed prior to said dredging, situated in Madison Parish, Louisiana,
and maintaining and quieting the plaintiffs in their possession of said property and ordering defendants, and each of them, forthwith to deliver possession thereof to plaintiffs.
(5). Defendants, and each of them, are hereby permanently enjoined from disturbing or in any manner interfering with plaintiffs' possession of the lands hereinabove described or any part thereof.
(6). There is further judgment in favor of plaintiffs and against defendants, Howard L. Jones and DeWitt Smith, in solido, for the stumpage value of the timber wrongfully cut and removed by defendants from the lands in controversy, as above described, in the full sum of $28,517.64, with legal interest thereon from date of judicial demand until paid.
(7). Plaintiffs' demands for a monetary judgment against the defendant, Edgar Carneal Woodyear, are hereby rejected.
(8). All costs of the lower court are taxed against the named defendants, with the exception of the defendant, Woodyear.
(9). Costs of this court with respect to plaintiffs' appeal against defendant, Woodyear, are taxed against plaintiffs. All other costs of this appeal are assessed against defendants.
As above amended and recast, the judgment appealed from is affirmed.